and Vanessa Eisenman. Ms. Eisenman, when you're ready. May it please the court, Vanessa Eisenman for Anthony Ibekie. Mr. Ibekie's conviction on count five should be reversed because there was insufficient evidence that he ever communicated with the alleged victim, Gary Foster, in furtherance of the charged inheritance fraud scam. As the district court correctly pointed out, there really wasn't a lot of evidence at all regarding Gary Foster in the six day trial. Unlike every other named victim in the complaint, Mr. Foster did not appear to testify. So let's start with that. With count five, the focus is wire fraud. The focus is wire fraud. Yes, there was a wire fraud on September 4th, 2019 from Gary Foster's company to a company that was associated with Mr. Ibekie. We are not disputing any of that. The burger services? The burger services. So with the wire fraud, does it have to be focused particularly to Gary Foster? Does there have to be a broader net for as an element of a scheme to defraud? The way I see it is that it involves both the second and the fourth elements that the government had to prove. And maybe I was a little inartful in my briefing. But basically what the government had to show is that Gary Foster qualifies as a victim here because this wire fraud that is the whole point of count five, the necessity for count five, that was made in furtherance of the charged inheritance fraud scheme. So Gary Foster has to be connected to the inheritance fraud scheme through that wire transfer. So I think I said it a little inartfully in my brief. But it kind of involves elements two and four. Was he actually a victim? And was this wire that he made, which we do not dispute, was made by Foster or by a company associated with him? Was that actually in furtherance of this scheme? Yes, we know the transfer happened. But why did it happen? And the district court found that this was a really close call. But the district court found that Agent Kodosky's, I could be mispronouncing his name, the case agent's testimony. The IRS agent? I'm sorry? Is that the IRS agent? He was the case agent.  Yes. Or one of the two case agents. His testimony was enough to fill that gap, was enough to show the connection between this wire and the inheritance fraud. And frankly, it just was not. If you look at the agent's testimony, it's very, very vague and it's very short. And this is in, let's see, Appendix 19 of my brief, of the opening brief. I've seen this email address throughout the course of the investigation. This is an email address that was associated with Mr. Rebecki's alias, Peter Fizer. I've seen this email address throughout the course of the investigation when dealing with correspondences or victim communications, in particular for Gary Foster. That's all we have. There was no follow-up about the content of any such communication, nor did the case agent even say that he actually read the communication. And the communication itself, the documents, were never entered into evidence. There was no other testimony regarding what this could possibly have been about. There's not even a time frame on when he saw these communications. All we know is that an email address that was associated with Mr. Rebecki's alias, at some point in a light most favorable to the government, that was used to communicate with Foster. But we have no idea about time. We have no idea about the content. We do know that this thousands of dollars, I think $7,680, landed in Berger Services' account, which was in the name of Rebecki's ex-wife, correct? Yes. And what does the record say about Berger Services' business? It was an account to receive the proceeds of this fraud scheme, correct? Yes, but the government did not establish that that was the exclusive function of this account. And I say that word exclusive because I really think that the Durham case that I cited in our reply brief is really helpful. It helped me a lot to understand this. If you've got this kind of evidentiary gap, this documentary evidence gap, the government would need to show something like the Berger account was exclusively used for the inheritance fraud. Every wire that came into that account was pursuant to inheritance fraud. The government did not show that. Is there anything in the record about what Berger Services purports to do? There was conflicting testimony on that. Mr. Rebecki testified that it was associated, I believe, the government was trial counsel, so please correct me if I'm wrong, but was associated with a trucking company. But at sentencing, there was actually evidence that he used this Berger account, which was a BMO Harris Bank account, not only for this fraud, for the inheritance fraud, but also for his romance fraud scheme. There were multiple schemes, but the government only chose to focus on the inheritance fraud scheme at this trial. But what the government at least needed to show is that that Berger account, without other evidence about what this communication was, we're not disputing the other accounts where there was tons of testimony regarding what these communications were. But without that content of the communication, the government would have at least had to establish that this BMO account, when money went in there, it was just because of the inheritance fraud. And, in fact, at sentencing, this was relevant conduct at sentencing, it's at R-399, this same Berger BMO account was used for a different scam. So even if we say that we are pretty confident Foster was a victim of some fraud, we cannot say beyond a reasonable doubt that he was a victim of this inheritance fraud. And as the district court correctly pointed out, the spreadsheets don't get us there either, because these spreadsheets that were found on Mr. Rebecki's computer had thousands of names, and the government candidly admitted that they could not prove that every single one of those names even got an inheritance letter, let alone got a communication that was in the relevant timeframe to kind of match up with this wire. So we just have too many... So what I'm hearing is that there is no question there was evidence presented that Foster deposited this money of over $7,000 into the Berger account. The question, or the representation, is that that was based on a fraudulent intent. Yes, and not only a fraudulent intent, it had to be about this inheritance fraud scheme. Not just any fraud, it had to be about this scheme, because that's what was alleged in the indictment. So not just any, it had to be this one, and that's what we don't have. We don't have that connection between the wire transfer, which we don't dispute, occurred, and why. And that's where I think the Durham case helps us fill in the gap, because in that case the government similarly did not have documentary evidence showing why these wire transfers occurred, and this court said, I'm sorry, but we can't just assume that every time there's a wire transfer into an account that was used for fraud that those wire transfers are...  But here we don't have the contents of the communication, but I believe there was evidence in the record that the communication was between Foster and this Pfizer character, which is your client admitted, it's an admitted alias. So doesn't that go a little bit further? I think it goes a little bit further, but I don't think it gets you the whole way, because again, I hate to keep going back to this, but I really like Durham. It wasn't established that the defendant only used the alias Peter Pfizer just for fraud, and it wasn't established that Peter Pfizer or this email address was only used just for this inheritance fraud. And that's something that the government had to prove. Not only that this was just kind of, it looked like Foster was a fraud victim, and in fact the case agent's testimony, he just kind of assumes he's a fraud victim. He says, yep, that's a picture of Gary Foster. He was an inheritance fraud victim. It's just assumed. But they had to tie that up. They had to tie up the wire fraud with Gary Foster in this inheritance fraud scheme, and that's what we allege they didn't do. Would you like to save some time? Yes, please. Thank you. Pronounce your name for me. Yes, good morning, and may it please the court. My name is Paige Nutini, and I represent the United States. Thank you, Ms. Nutini. You may proceed. The evidence was more than sufficient to support the jury's verdict on Account 5 wire transfer from victim Gary Foster. The evidence at trial established the defendant followed the same process or modus operandi in defrauding his victims, and those victims included Gary Foster. This is important because the jury was entitled to consider the totality of the evidence, including the search. Does it make sense to somewhat start where counsel for Ms. Eisman stopped as to whether or not there was a need for the jury to decide the why? Yes, Your Honor. Defense counsel relied on the U.S. v. Durham case extensively, and the government's position is that this case is distinguishable from Durham, and there are several reasons for that. First, in Durham the government failed to establish that the fraud was the exclusive function of the companies who conducted the wire transfers. Here there is ample evidence that the defendant's businesses served no legitimate purpose. The fraud was the exclusive function of these businesses. For example, Burger Services was a company that was formed in the defendant's ex-wife's name, and the defendant utilized that business bank account for his own purposes. Essentially his ex-wife was a nominee on that account. He used those funds to pay his own rent, and he used the account in the businesses solely to receive fraudulent funds. There is no evidence in the record that these businesses performed any legitimate purpose. Not generally, but the Burger Services bank account. Was there evidence that that was the only purpose for that account? There was testimony from Special Agent Kadonsky that based on his and Special Agent Amy Mansker's review of the voluminous financial records including Burger Services, there was not a legitimate business function for any of these businesses. That's specific to Burger Services. The wires that were coming into this account were from individuals who appeared to be victims of fraud. Defense counsel references multiple different fraud schemes. That is correct. However, with respect to Gary Foster specifically, he was a victim of inheritance fraud. You know this because Mr. Foster's name appeared on these mail merge spreadsheets along with victims like Kong Lee and Dale Helms. Those were victims who did testify at trial. When Mr. Foster's name appeared on those mail merge spreadsheets, there was then testimony that he had communications with Peter Fizer, who again, the sole and only purpose of defendant's alias identity, Peter Fizer, was to communicate with fraud victims. We keep wanting to go broad. I understand the government's desire to keep it broad. I'm needing you to laser focus on count five. I'm going to ask my question again and hopefully I can get an answer. Was there evidence to suggest that the Burger Services bank account was used for any other purpose? There was evidence and testimony at trial, and I cannot speak to whether that was specific to Burger Services. However, there was testimony when the defendant himself testified that he had a trucking business where he would import cars and send them to Nigeria. There is no evidence based on the investigation that that is actually true and that that was a legitimate business. But speaking directly to Burger Services, there is a possibility that funds relating to the trucking business, purported trucking business, would be in that account. However, there is no evidence that that was a legitimate business transaction. The representation by counsel from the other side is suggestion that there were multiple strands of frauds going into this particular account. Is there any evidence that was presented to the jury that Gary Foster's reason was limited to the inheritance? I know we've tied it to the other victims that testified at trial. Beyond that, were there additional evidence submitted? There was evidence about this being specific to the inheritance fraud, and the primary evidence was that Foster appeared on these mail merge lists. And the sole purpose of these lists was that the defendant would purchase lists of hundreds of names of individuals, and he would use a template letter, merge them together, send out in bulk these letters in the mail, hoping essentially that a victim would bite. I just want to make sure I understand the inference here. Do you want us to make the inference that because Gary Foster's name appeared on the same spreadsheet as Kong Lee and the other victim, that means, therefore, that means he was also a victim of inheritance fraud? Is that the sort of sequence of steps? Not in isolation, Your Honor, but in considering the totality of the circumstances, yes. Because the government's position is that there would be no other reason for Gary Foster's name to appear on these lists but for him being a potential inheritance fraud. But what about inheritance fraud? There's no title on the Excel spreadsheet that says inheritance fraud. Sure. Right? So you're asking us to make that inference. Yes. The romance fraud that defense counsel referenced is something that was not presented at the trial. However, it is in the record with respect to sentencing. That fraud did not involve mailing letters in the mail at all. So there was not a template list of names, and that fraud was committed by essentially establishing relationships with people online. And so there is no evidence in the record that the mail merge spreadsheets were used to commit any fraud but the inheritance fraud. That coupled with the fact that Gary Foster had communications with Peter Fizer, who, again, was an inheritance fraud alias. Peter Fizer was someone who defendant made up to communicate with inheritance fraud victims specifically. So all four, Lee, Aguda, Perselli, and Helms, all four of those were victims of the inheritance fraud. That is correct. All four of these names are also contained on the same spreadsheet? No. There is evidence that the names Kong Lee and Dale Helms appeared on the spreadsheet recovered from the devices. There was testimony at trial that there was multi-terabytes of evidence recovered on these devices, and over 10 different devices recovered from the defendant's residence. And so the spreadsheets that the government was able to locate and review had those victims on them. Those two names? Yes. Kong Lee, Dale Helms, and then Gary Foster. Going back to Judge Maldonado's question, you're wanting us to infer that because the third name, Foster, was included, then he would have been a part of the inheritance fraud. Again, with the other evidence in the record, yes. And that other evidence is that the defendant communicated with Gary Foster. The fact that the communications were not introduced at trial is not a deciding factor or a determining factor here. The defendant used numerous email addresses with the name Pfizer often in them, and there was testimony that one of these email addresses ending in yandex.com was used specifically to communicate with Gary Foster. So it's the government's position that there's no other reason that the defendant posing as Peter Pfizer would be communicating with Gary Foster, but for to be defrauding him and having him commit this inheritance fraud. And further, the amount that Gary Foster wired is important because he wired approximately a little over $7,000, and there was evidence at trial introduced that many of the victims in this initial wiring when they were first sort of roped in by the defendant, their initial what was called a retainer fee was approximately $6,000 to $7,000. So it matches sort of the same modus operandi that was occurring with other victims who did testify at trial and who did explain that they were defrauded by the defendant, specifically defrauded by an individual they knew to be Peter Pfizer and didn't necessarily know it was the defendant, but the defendant himself admitted he was Peter Pfizer. And so based on all of this, it's the government's position that the jury reasonably concluded from the circumstantial evidence that the defendant intended to defraud victim Gary Foster. If there are no further questions, the government rests on its briefs and requests that the court affirm the defendant's conviction and sentence. Thank you. We will hear in rebuttal. Thank you, Your Honor. I will try to be brief. So the government relies on three things, right? MO, communications and the spreadsheets. Okay. Durham says that MO is not enough. It's not enough. It categorically cannot be enough to fill in a gap to a specific wire transfer. The email is incredibly vague. As we've pointed out, that's what the district court used to fill the gap. But as we've pointed out, and the government really doesn't make a whole lot of argument that this testimony says more than it does. There really was not a whole lot of testimony about this communication and the government did not establish that this email address or that alias was only used in conjunction with inheritance fraud. And the third thing is the spreadsheet. And the district court listened to all of the six days of testimony found that the spreadsheets do not move the ball enough because the spreadsheets were filled with thousands of names and the government couldn't even say that everyone who was on the spreadsheets gotten an inheritance fraud letter. We don't even know any dates here. When were these spreadsheets created? I don't know. When was this email communication? I have no idea. Is it anywhere in the vicinity of the December or September 4th, 2019 wire transfer? I have no idea. This is all MO. The government is trying to get this conviction based on all of the And that's just not how it's supposed to work.  this is not Mr. Becky's burden to show that there was some other reason for that. This is the government's burden to prove beyond a reasonable doubt that this wire transfer specifically was in furtherance of the inheritance fraud. Thank you. We ask you to reverse. Thank you, counsel and Ms. Eisman and Ms. Nutini. We thank you both for your time this morning and we'll take the case under advisement.